IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
October 18, 2024
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

| | | |
|---|---|---|
| Stephen Collin Adams, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:24-cv-00053 |
| | ) | |
| Mark Berch, CEO of Service Finance | ) | |
| Company, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter is before the court on Defendant Mark Berch's motion to dismiss *pro se* Plaintiff Stephen Collin Adams's complaint under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (Dkt. 4.) For the reasons stated below, the court will grant Berch's motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. The court will not dismiss the entire action, as it concludes that Service Finance Company, LLC ("SFC") is a necessary party under Federal Rule of Civil Procedure 19 and must be added as a party defendant. The court will order Adams to serve SFC within fourteen days of the date of the court's accompanying Order.

## I.     Background

### A.  Factual History

The following facts are taken from Adams's complaint and supporting exhibits and the court presumes them to be true. *See Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226

(4th Cir. 2019) (construing complaint and affidavits submitted by plaintiff to be true when resolving a Rule 12(b)(2) motion to dismiss when they are not controverted by evidence from the other party.)

On July 6, 2022, Adams executed an installment contract to purchase "HVAC-plumbing equipment" from Savannah Air Factory LLC. (Pl.'s Ex. C at 5, 12 (Dkt. 1-4).) Adams, who lives in Fort Valley, Virginia, purchased the equipment for a home improvement project. (*Id.* at 12.) The cash price for the equipment was $7,000, which Adams agreed to pay in 60 monthly installments with an annual interest rate of 17.99 percent. (*Id.* at 5.) Interest began to accrue "on the date the contract [was] purchased by Service Finance Company" ("SFC"). (*Id.*) Based on the principal amount, payment period, and interest rate, the contract's payment schedule calls for 60 monthly payments of $177.72 for a total cost of $10,663.20. (*Id.*) Adams also agreed to a "promotional period offer," contained in an addendum to the contract, that offered to refund all interest charges if Adams (1) repaid "the entire Amount Financed" (*i.e.*, the $7,000 principal) on or before the due date for the eighteenth monthly payment and (2) made all his monthly payments on time. (*Id.* at 5, 9–10.)

Savannah Air Factory assigned the installment contract to SFC pursuant to a separate agreement between the two companies. (*Id.* at 6.) SFC is a sales finance company that purchases retail installment contracts ("RICs") between customers and dealers after goods are purchased, delivered, and installed. (*Id.* at 3.) Defendant Mark Berch is the chief executive officer of SFC.[1] (Compl. at 2 (Dkt. 1).) In a letter SFC later sent to Adams, SFC recounted

---

[1] In his complaint, Adams refers to Berch as the "CEO" of SFC. (Compl. at 1.) In his memorandum in support of the motion to dismiss, Berch refers to himself as the "President" of SFC. (Def.'s Mem. in Support of Mot. to Dismiss at 1 (Dkt. 5) [hereinafter "Def.'s Mem."].)

that it "spoke with" Adams on July 12, 2022, to "advise [him] that the dealer had indicated the work was complete and that SFC would be purchasing the RIC related to the completed project." (Pl.'s Ex. C at 3.)  According to SFC's letter, Adams "indicated that the work was complete and that [he] understood the terms and conditions of the RIC." (*Id.*)

Adams's account payment history shows that he made eighteen monthly payments of principal and interest between August 11, 2022, and January 16, 2024. (*Id.* at 13–14.)  The payment history indicates that Adams made a total of $5,568.60 in payments during this period. (*Id.*)

The complaint and supporting exhibits do not indicate whether Adams continued to make monthly payments after January 2024.  It appears that he may have missed certain payments, as the next correspondence between Adams and SFC mentioned in the complaint concerns a dispute over a "debt." (Compl. at 3–4.)  In May 2024, Adams sent SFC a letter titled "debt validation request." (Pl.'s Ex. B at 2 (Dkt. 1-3).)  The letter notified SFC that Adams "officially **disputed**" the "alleged debt," stated that the account in question "contain[ed] fraudulent or incorrect information," and demanded "**[v]erification and validation**" of the debt. (*Id.* (emphases in original).)  Adams asserted that the Fair Debt Collection Practices Act ("FDCPA") required that "all activities on this account must cease" until the dispute was resolved and that SFC needed to inform credit reporting agencies or credit bureaus of the dispute. (*Id.*)  He also demanded that SFC disclose certain documents and information related to the account. (*Id.* at 2–3.)

Adams sent SFC a second letter on May 22, 2024, which he titled "notice of fault and opportunity to cure." (*Id.* at 9.)  This letter asserted that SFC was required to respond to his

initial letter "within fifteen days to avoid default." (*Id.* at 9.)  Adams alleges that SFC sent him

a letter in July 2024 "informing [him] that this debt was sent to a collection agency." (Compl.

at 3–4.)  He claims this action caused him injury by lowering his credit score. (*Id.* at 4.)  A

credit score history report attached as an exhibit to Adams's complaint shows a credit score

decreasing from a score of 799 on March 14, 2024, to a score of 655 on April 14, 2024, with

an eventual score of 635 on July 14, 2024.  (Pl.'s Ex. A at 2 (Dkt. 1-2).)  The credit score report

does not include Adams's name or another identifier. (*Id.*)

SFC sent Adams another letter on September 3, 2024.  (Pl.'s Ex. C at 3.)  SFC enclosed

copies of Adams's installment contract, consumer credit application,[2] payment history, and

original work order, while noting there was no "applicable collection agreement." (*Id.*)  The

letter stated that Adams had made eighteen payments with respect to the debt and that "[t]o

SFC's knowledge, no payments have been made to Savannah Air Factory for the goods and

services purchased other than the execution of this RIC." (*Id.*)  It also stated that "SFC sent

your client [sic] monthly statements and attempted to contact him by telephone, by mail, and

by email," and that "SFC has reviewed the credit reporting associated with this account and

validated the accuracy." (*Id.*)

## B.  Procedural History

Adams filed this action on July 23, 2024.  (Compl. at 1.)  There is some uncertainty as

to whom Adams intended to name as the Defendant(s).  The case caption and list of

defendants on Adams's complaint form name just one Defendant: "Mark Berch CEO of

---

[2] Adams filled out a consumer credit application with SFC at the time he signed the installment contract.  (Pl.'s Ex. C at 11.)

Service Finance Company, LLC." (*Id.* at 1–2.)  But in the body of the complaint, Adams refers to "Service Finance Company, LLC" as a "defendant," alleges that SFC (rather than Berch) took unlawful actions, and seeks injunctive relief against SFC.  (*Id.* at 3–5.)  The civil cover sheet for the complaint lists "Service Finance Company, LLC" as the only Defendant.  (Dkt. 1-1.)

In his complaint, Adams alleges that SFC violated "Debt Validation according to Fair Debt Collection[] Practice[s] Act (FDCPA) and Fair Credit Reporting Act (FCRA)."  (Compl. at 3.)  He further alleges that he "was not afforded consumer protection" because "the debt was never validated."  (*Id.*)  The complaint identifies 15 U.S.C. § 1692f and § 1692g as the applicable provisions of the FDCPA.  (*Id.* at 2.)  Adams requests several different forms of relief, including monetary compensation in "the amount of the original loan" ($7,000.00), $1,000 in damages for the negative impact on his credit score, and a court order requiring SFC to "answer the questions of [his] debt validation request" and "negate to all credit bureaus of this non-validated debt."  (*Id.* at 5.)

On August 22, 2024, Berch moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  (Dkt. 4.)  Berch argues that Adams has not alleged facts supporting the exercise of personal jurisdiction over Berch, who resides and works in Florida.  (Def.'s Mem. at 1.)  He alternatively argues that the complaint fails to state a claim for relief under Rule 12(b)(6) because it does not allege that Berch personally interacted with or harmed Adams, and Berch, as an individual officer of SFC, is not personally liable for the conduct of other SFC employees.  (*Id.* at 3–5.)  Berch also contends that Adams failed to name SFC as a Defendant in the case.  (*Id.* at 4 n.2.)

On August 22, the same day Berch filed the motion to dismiss, the court sent Adams a *Roseboro* notice instructing him to respond to the motion within 21 days or risk dismissal. (Dkt. 7.)   On September 6, Adams submitted a filing titled "notice in response to misunderstanding of defendants and additional claim." (Dkt. 9 [hereinafter "Pl.'s Notice"].) The filing largely reiterates Adams's claims against SFC and alleges that "Mark Berch through the employees of his company, Service Finance Company, LLC. has wronged [him]."[3]  (*Id.* at 1.)   Adams also attempts to name the Clerk of Court and "Deputy of Court" for the Western District of Virginia, Harrisonburg Division as additional Defendants.   (*Id.*)   He claims the Clerk and Deputy harmed him because they "did not carry over the proper name of this case [on PACER] to include the defendant's title 'CEO Service Finance Company, LLC.'" (*Id.* at 2.)

## II.   Standard of Review

Rule 12(b)(2) permits a defendant to file a motion to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).   When a court addresses a Rule 12(b)(2) motion without holding an evidentiary hearing, "the party asserting jurisdiction has the burden of establishing a *prima facie* case of jurisdiction." *Hawkins*, 935 F.3d at 226.   That is, the court "must determine whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction." *Id.* (citing *Sneha Media & Entm't, LLC v. Assoc. Broad. Co. P Ltd.*, 911 F.3d 192, 196–97 (4th Cir. 2018)).   This

---

[3] In his reply brief, Berch asks the court to grant his motion to dismiss as unopposed on the ground that Adams's "notice in response" did not actually respond to the arguments Berch raised in support of dismissal.  (Dkt. 11.)  While Adams's response mostly repeats the allegations in his complaint, he does briefly address the issue of personal jurisdiction by suggesting that the failure to include Berch's job title in the case caption on PACER caused the jurisdictional issue.  The court will address the question of personal jurisdiction rather than treating Berch's motion as unopposed.

"resembles the plausibility inquiry governing motions to dismiss for failure to state a claim under Rule 12(b)(6)." *Id.* But when resolving a Rule 12(b)(2) motion, "the court may also consider affidavits submitted by both parties, although it must resolve all factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction." *Id.*

The court must liberally construe pleadings filed by a *pro se* party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The liberal construction rule "allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). When evaluating *pro se* litigants' claims, "courts routinely look beyond what [the] litigants identify as their 'complaint' and analyze the substance of any included documents." *Pendleton v. Jividen*, 96 F.4th 652, 656 (4th Cir. 2024) (addressing motion to dismiss *pro se* complaint under Rule 12(b)(6)). At the same time, though, liberal construction "does not transform the court into an advocate" for a *pro se* litigant. *Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990).

### III.  Analysis

#### A.  Personal Jurisdiction over Berch

Berch was served in Florida via registered agent on August 1, 2024. (*See* Dkt. 3.) "Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003); *see* Fed. R. Civ. P. 4(k)(1)(A). Thus, the court may exercise personal jurisdiction over a nonresident defendant like Berch

only if two conditions are satisfied: "(1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst*, 334 F.3d at 396. "Because Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause, the statutory inquiry merges with the constitutional inquiry." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).

To satisfy the constitutional requirements for specific personal jurisdiction,[4] "a defendant must have sufficient 'minimum contacts' with the forum state such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The Fourth Circuit has articulated a three-part test for specific jurisdiction that considers "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (cleaned up).

Even construed liberally, Adams's complaint does not allege any facts that might satisfy these requirements for specific personal jurisdiction.  The complaint and supporting exhibits do not suggest that Berch personally conducted any activities in Virginia nor did he engage in *any* activities directed at Virginia.  Adams does not allege that Berch played any role in SFC's

---

[4] There are two different types of personal jurisdiction: "general" and "specific."  General personal jurisdiction requires that the defendant have "continuous and systematic contacts with the forum state" and allows parties to sue the defendant "in that state for any reason, regardless of where the relevant conduct occurred." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir.2009) (internal quotation marks omitted).  This is a "more demanding standard" than the standard for establishing specific jurisdiction, *Consulting Eng'rs Corp.*, 561 F.3d at 276 n.3, and Adams does not meet it here.

purchase of Adams's installment contract or any later actions related to the contract. Adams addressed his May 22 "notice of fault and opportunity to cure" letter to both Berch and SFC, (Pl.'s Ex. B at 9), but that one fact does not show that Berch "purposefully directed" any activity at Adams in Virginia. *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 351 (4th Cir. 2020) (citation omitted).

Nor may the court exercise personal jurisdiction over Berch as a corporate agent of SFC. "A corporate agent is not subject to personal jurisdiction in his individual capacity under the [Virginia] long-arm statute solely based upon his status as a corporate officer or agent." *D'Addario v. Geller*, 264 F. Supp. 2d 367, 380–81 (E.D. Va. 2003). When a claim against a corporate agent "rests on nothing more than that he is an officer or employee of the non-resident corporation," and the agent himself had no relevant contacts in the forum state, "the nexus between the corporate agent and the forum state is too tenuous to support jurisdiction over the agent personally." *Columbia Briargate Co. v. First Nat'l Bank in Dallas*, 713 F.2d 1052, 1064–65 (4th Cir. 1983); *see also Calder v. Jones*, 465 U.S. 783, 790 (1984) (stating that, for purposes of personal jurisdiction, employees' "contacts with [a forum state] are not to be judged according to their employer's activities there"). Thus, any contacts other SFC officers or employees may have had with Adams in Virginia are not attributable to Berch based solely on his position at the company.

Because Adams has not made out a prima facie case for personal jurisdiction, *Hawkins*, 935 F.3d at 226, the court will dismiss the claims against Berch without prejudice. It need not address the sufficiency of Adams's claims under Rule 12(b)(6).

## B. Adams's Claims Against Other Defendants

Although the court will dismiss Berch from this action, it will not dismiss Adams's entire complaint.  Fairly read, the complaint alleges claims against SFC.  While Adams does not name SFC as a separate defendant in the case caption, his claims all focus on conduct allegedly committed by SFC, and his requests for relief ask that the court order SFC to take certain actions.  Adams's civil cover sheet, which names SFC as the sole defendant, only reinforces this construction of the complaint.  *See, e.g.*, *Caldwell v. United Parcel Serv., Inc.*, No. 7:15-cv-00358, 2015 WL 6159509, at *1 (W.D. Va. Oct. 20, 2015) (considering information on civil cover sheet when evaluating the sufficiency of a *pro se* litigant's claims).

Because Adams's complaint alleges claims against and seeks relief from SFC, the court concludes that SFC is a necessary party to the action under Rule 19.  *See* Fed. R. Civ. P. 19(a)(1). The court "cannot accord complete relief" without assessing Adams's claims against SFC, and adding SFC as a party "will not deprive the court of subject-matter jurisdiction" over the action.  *Id.*  Rule 19 states that if "a person has not been joined as required, the court must order that the person be made a party."  Fed. R. Civ. P. 19(a)(2); *see also* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."). Accordingly, the court will order that SFC be added as a defendant.  It will order Adams to complete service on SFC within fourteen days of the date of the court's accompanying Order.

Finally, Adams's September 6 "notice in response to misunderstanding of defendants and additional claim" names the Clerk of Court for the Western District of Virginia and the "Deputy of Court" for the Harrisonburg Division as "Co-Defendants."  (Pl.'s Notice.)  Adams does not appear to allege any legal claim against these parties; he simply demands that they

correct the case caption on PACER to read "Adams v. Berch, CEO Service Finance Company, LLC." (*Id.* at 2–3.)  The court advises Adams that such concerns are better addressed by contacting the clerk's office, and the incomplete case caption had no impact on the court's analysis of personal jurisdiction.  Even if the court treated Adams's notice as an amended complaint, his request for relief from the Clerk and Deputy must be dismissed as moot in light of the dismissal of all claims against Berch.

### IV.    Conclusion

For the foregoing reasons, the court will grant Berch's motion to dismiss for lack of personal jurisdiction and dismiss the claims against Berch without prejudice.  The court will order that SFC be made a party defendant pursuant to Rule 19(a), and it will order Adams to complete service on SFC within fourteen days of the date of the Order that accompanies this Memorandum Opinion.

**ENTERED** this <u>18th</u> day of October, 2024.

/s/ *Jasmine H. Yoon*
_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE